Good morning, Your Honors. My name is Joran Lyons. I'm appearing on behalf of Petitioner Sun Deng, pro bono. And just can you point that microphone to your mouth? Yes, sir. It's one size fits all, unfortunately. Thank you. When we get somebody particularly tall. So I am Joran Lyons appearing pro bono on behalf of Petitioner Sun Deng. Oh, we appreciate that. Thank you. And if I may, I would like to reserve two minutes for rebuttal. There are two essential issues in this case. I will address the matter of withholding of removal first, as I think it is the more clear cut. The remaining issue is the one-year bar issue and whether the court, A, has jurisdiction to review the one-year bar determination, and B, whether it, and it does, and whether then the one-year bar was correctly decided by the agency. On the matter of withholding of removal, the record simply does not support the, excuse me, the agency's determination is not supported by substantial evidence in the record. Can you confirm for me whether the I.J. found past persecution and gave your client the benefit of the rebuttable presumption? The I.J. did find past persecution. His application of the rebuttable presumption was not proper. He essentially broke. Well, I know that there was a little bit. He said it was past persecution when your client was in the camp, but it was not past persecution when he returned later. But nevertheless, there was a finding of past persecution? Absolutely. Okay. I just wanted to clarify that. Right. And his application of that was the issue. Once you find past persecution, the burden shifts to the government to show a fundamental change in country circumstances. The State Department's report, which was freshly issued at the time of the hearing, the government committed numerous documented human rights abuses. Torture was a serious problem throughout the country, and maltreatment of ethnic minorities continued. Vietnamese, which the respondent is ethnic Chinese, he'd been misidentified many times by government forces as being Vietnamese. He's clearly not Cambodian. Vietnamese and Chinese both have lighter complexions. As recently as months before the hearing, the U.S. State Department was saying that Vietnamese continue to be seen as a threat to the nation and culture and that they're singled out for maltreatment. So I think it's evident that there is no substantial evidence in the record to support the judge's conclusion. Well, how about his own experiences? He came in, he didn't have documentation, if I understand it correctly, and they basically asked him for a bribe. If I'm wrong, you can correct me, but it had an effect. And when he paid up, they let him go. I mean, why isn't that enough? I mean, they didn't beat him and say you're Chinese, we're going to torture you or anything like that. They, you know, they wanted money, which is not so uncommon in corrupt regimes. Their manner of expression. And he was, in fact, illegal. I mean, he was undocumented. I mean, he may have been Cambodian, but he didn't have any papers, right? The record states that he was traveling along with five other ethnic Cambodians who were returning into Cambodia. He was the only one singled out. He was threatened with being sent to prison from which he would not return. They set off explosives in the field. But he was, in fact, traveling without documents. And when he, I mean, what they wanted from him was a bribe to let him go even though he didn't have documents. I mean, you know, we don't pass on the morality of conduct of government officials, but what they were trying to do is get money out of him. And I think there's an important distinction between a finding that country conditions have changed so substantially that he no longer has a likelihood of persecution versus a finding that in this particular instance they didn't actually have the intent to kill him or seriously harm him. They wanted his money. What you're up against is the fact that the regime that persecuted him was Khmer Rouge. I mean, they are the killing fields, right? You know, one of the most brutal regimes of the 20th century, you know, right up there with Hitler and Mao and Stalin, right, in terms of brutality. Why isn't it supported by the record to say when that regime is out of power in 79, was it? Yes, sir. That, you know, whatever presumption you can gain from the fact that he was persecuted by that terribly brutal regime no longer applies. Your Honor, the Khmer Rouge regime, many of its former members, including Prime Minister Hun Sen, remain in power today. The fundamental functioning of the Cambodian government is still one in which its power is expressed through violence against its own citizens. The respondent, excuse me, the petitioner here, himself was harassed by government forces all the way up to the time of his departure. He was repeatedly stopped and questioned over and over because of his physical appearance, because he's not ethnic Cambodian. And that animosity that existed in the 70s has carried through all the way up to the time of his departure from Cambodia. He's not able to change his face. He's not able to change his skin complexion. And these are things that subjected him repeatedly to persecution in the 1970s and continued maltreatment all the way up through the time of his departure from Cambodia. So there really has not been a fundamental change in country conditions despite the repeated churning of the government. Many of the same people remain in positions of power that were in the Khmer Rouge, including the Prime Minister, and the attitudes that they have towards impure or non-ethnic Cambodians remain entrenched today. And that's evident from the experiences the petitioner had in both the 1970s, in which he very nearly died, and several members of his family were in fact killed, and the treatment he experienced when he... Well, he certainly was lucky to escape with his life. I mean, there's no doubt about the fact that many people were killed by the Khmer Rouge, right? Yes, Your Honor. I mean, over a million people, in fact, including... ...were killed, his mother, his sister, his brother. By the country's logic, I mean, a million people is... A million people is a lot of people in itself, but, you know, given the size of the country, I mean, it's a huge, huge proportion, right? It's about 14% of the population, yes, sir. A stunningly large number. Yes. You have a couple of minutes left. Do you want to say that, or did you want to discuss other points? I think maybe we should hear from the government and then see what's... Thank you. Good morning, Your Honors. May it please the Court, I'm Carmel Morgan on behalf of the respondent, the U.S. Attorney General. The agency properly concluded that the petitioner in this case, who filed an asylum application over six years after his entry into the United States, failed to establish extraordinary circumstances excusing his untimely filing, and that decision of the agency is not reviewable by this Court. So is it your position that this should be dismissed in part and denied in part? That's precisely my position. The Court should dismiss the petition for review as it relates to the agency's determination that the asylum application was filed untimely and should deny the petition for review with regard to the agency's decision not to grant withholding of removal. And then we also have the motion to reopen, too. That's correct. The motion to reopen is not reviewable by the Court for the same reasons that the timeliness determination is not reviewable by the Court. The motion to reopen was to present further evidence regarding the timeliness of his asylum application. And so were the Court to review that, that would sort of be a backdoor method to get at something that is unreviewable, and that would be impermissible. So the motion to reopen is also beyond this Court's jurisdiction. Well, what if the motion to reopen had things that would have made a difference, you know, if it were something that were newly discovered and not available at the time and could change the Court's ruling on the extraordinary circumstances? Wouldn't the Court have to look at it, look at, you know, don't we have to peek under the covers and decide if there's anything in the motion to reopen? There is an exception where the Court may review legal issues or constitutional questions. And so if there was a legal issue with regard to whether the evidence that he presented in his motion to reopen met the standard of new and previously unavailable evidence, that that might be reviewable. But in this case, the evidence that he presented, although it was previously unavailable, it wasn't really new and it wasn't material to the question at hand, which was whether or not he had an excuse of not timely filing during the relevant period. All right. I would like to address one of the questions that you had asked Petitioners' Counsel, which was about a finding of past persecution. The government's reading of the immigration judge's decision is that he didn't make any explicit finding about past persecution. Well, he does talk about that he was persecuted when he was young and in the camp. And then he says, but when you came back, that wasn't past persecution. Now, my understanding is you really can't have it both ways. You can't, like, just say, I mean, either there's past persecution and you're entitled to the presumption or not, that you can't just say, well, this isn't past persecution, but this is. You're correct that, generally speaking, a showing of past persecution would entitle you to a presumption of future persecution. But in order for the future persecution presumption to apply, the past persecution has to be on the same basis as the future persecution. And that's not the case here. I guess I'm kind of thinking it would be to your disadvantage if the court, let's say, if we were to say that there was past persecution and you said that the I.J. didn't make that, then essentially the I.J. would have looked through the evidence that you presented through the improper lens and then the argument would be, well, it has to go back for the I.J. to review it under the proper lens. I don't think any improper lens was used here. What the immigration judge was pointing out is that the past persecution claim was not on the same basis as his future persecution claim and couldn't be because the regime that inflicted the persecution decades ago was the Camarouge, and that's a political party that's no longer in power. I guess what I'm saying is that there was a finding of past persecution, but if I were in your position, I would be arguing that you rebutted it. It's sort of like a flip side of the same coin. Although it doesn't appear that the immigration judge made a finding of past persecution, but he did find that the petitioner was credible as he related his experiences as a child under the Camarouge in Cambodia. I would also argue in the government's position is that even if there's a finding of past persecution by the immigration judge that that finding was rebutted by the country report showing that there was a drastic change in governments between 1979 and the present time. You're saying the government's position as to past persecution is that the I.J. did not make a determination of past persecution? That's correct, Your Honor. So the I.J. hears the story, finds him credible, and does not make a finding of past persecution? There's no explicit finding. What he's saying is that you can't apply the presumption of future persecution where you don't have the same motive and the same persecutor, and that's correct under the law. And why is he saying that if he doesn't make a finding of past persecution? Why is that statement not merely dicta? It's sort of illumination. He might as well have been talking about philosophy, you know what I mean, or the rule in Shelley's case. Yeah. There's perhaps an implicit finding of past persecution, but he didn't make an explicit finding of past persecution in this case. He's saying that you just don't get the presumption of future persecution where your claim isn't based on the same motive and the same persecutor. It's a little tricky. Can I.J.'s do that, sort of refuse to make a finding of past persecution? I mean, the I.J. is there. He sees the evidence. And if the petitioner is entitled to a presumption, now, you know, we can argue, as Judge Callahan suggested, we can sort of talk about whether it's been rebutted or not in this case. But can the I.J. sort of wear a belt in suspense by saying, look, I'm not going to make a finding of past persecution, but if I did, hypothetically, it's rebutted anyway. That seems a little slick to me. I think. Too cute by half. It's the way. Three quarters. It's the way this evidentiary presumption works. It's not triggered unless your claim is that you're going to be persecuted. The petitioner, what do you do? You say, no, Your Honor, you've got to make a finding of past persecution. You've got to start arguing with the judge. Well, I think the burden, frankly, is on the petitioner to show that his claim. He did. He was found credible. He testified. He was found credible. What else did he do? I mean, if the judge won't utter the words out of an abundance, I mean, to me, it just makes me suspicious that maybe this judge wasn't trying to hide something. Respectfully, Your Honor, it's really the petitioner's burden to show that his claim of future persecution is based on the same persecutor, and he cannot do that here because that persecutor is no longer in power. Well, I'm sorry. Are you asking us to decide this case in dicta, saying, well, there's no finding of past persecution, but if there were, hypothetically, it seems to me we have to get past that point of past persecution, whether there was or wasn't, before we have an occasion to apply this. If you're telling us the I.J. didn't make a finding, maybe what we need to do is remand the case for the I.J. to tell us if that's a government position that he didn't. I don't understand. But how are you asking us? We either have to say there is no finding of past persecution or say that there was a finding and it was rebutted. Right? I think there's a third option, Your Honor, and that is that... A third way? A third way. And that is that the presumption simply doesn't apply when you don't have the same persecutor in power. You know, I.J.'s may do that, but we're Article III judges. We don't give advisory opinions. And how can we say the presumption doesn't apply if the predicate for presumption isn't in the record? If you take the position there's never been a finding of past persecution, why are we writing an opinion? This would be a hypothetical opinion. I'd be drummed out of the Article III Judges Club. I don't think it's an advisory opinion. It's just whether or not this evidentiary presumption could have any application. How is it not advisory? There's no finding of past persecution. What am I doing ruling on whether the presumption, which doesn't exist here, was rebutted? I mean, I don't quite get it. I'm not talking about rebuttal in this instance. I'm speaking as to whether or not the presumption has any application or any potential application. And it cannot in this case because the Petitioner's claim is based solely on the fact of his past persecution by the Camarouge, and that persecutor is not presently in power, and you can't have a the reason the presumption exists. What persecutor? There is no persecutor because we don't have a finding. You tell us we don't even know the Camarouge may have treated him well for all we know. There's no finding, but there's a claim, Your Honor. And his claim, his past persecution claim is based upon persecution by the Camarouge. I don't know. I think we need to send this back to the IJA to tell us whether there was a finding of past persecution. I mean, I can't be making findings here, legal rulings based on nothing at all. I mean, it seems entirely hypothetical. I mean, maybe the government should have insisted on a finding, don't you think? The presumption wouldn't apply in any instance. I don't know. When I get a case that raises the issue, I'll tell you. But it doesn't look to me like this case raises the issue. I'm looking at the IJA's ruling, and it says, Thus, to the extent that the Respondent claims past persecution because of what happened to him while the Camarouge were in power, his conditions have quite obviously changed and changed to such a radical degree that his experience in the past provide no basis for a well-founded fear of future persecution. Correct. There simply isn't a basis for the presumption to have been triggered because the regulation requires that you have the same motive and the same persecutor. There would be no reason to have a presumption if you were not going to base that presumption on the same claim, and his claims are different. Until we have something that raises a presumption, we don't get that. Now, you know, lowly Article I judges can say anything they want to. But how is the issue presented to us? If you take the position there's no finding of past persecution, we can't possibly give you a ruling as to what would happen if you did have such a finding. Can't you simply say that the presumption wasn't triggered in this case? I could say E equals MC squared, too. I mean, but it's not the kind of thing that would be binding on anybody because it would be purely hypothetical. Are you asking for a remand so the IJ can clean up the record? We are not asking for a remand, but if you feel that ---- If the government wants to say there is a finding, I certainly think one can read what the IJ did as a finding, and I would have thought that's what the government would have said. The IJ did his job and, you know, but if you say not, maybe we need to send it back and have some ---- The government has two things to say on that matter. The first is that the presumption isn't triggered, but the second is if the immigration judge did make a finding about past persecution, that that was rebutted by the record because the political party now in power is not the same party that he claimed persecuted him as a child. And what if it was Tuesday? Will you give us another hypothetical? No, Your Honor. May I say a word or two about ---- The IJ was very calm when he did it. I mean, we can make all sorts of ifs there, but that sounds to me like you're asking us for hypothetical ruling. Not at all. I'm just asking you to affirm the immigration judge's decision. You want to win anyway at all. Is that what you're telling us? No, Your Honor. Okay. I'd like to address withholding of removal as well as the asylum timeliness determination. Even if you were to reach the merits of the withholding of removal decision, I think it's well supported by substantial record evidence that what was presented by Petitioner wouldn't compel the Court to find that he would more likely than not be the person who was returned. Why wouldn't we reach the merits of the withholding decision? Pardon me? Why would we? We don't have to reach the merits of withholding. We don't reach the merits. Correct. All right. But you said even ---- But I'd like to, if you were to reach the merits, we have to reach the merits of that. Well ---- You just very fond of that word if. You have to reach the merits on withholding. That's correct, Your Honor. But if you were to find that the past persecution presumption was simply not triggered under the facts of this case, then that could be substantial evidence to support the holding. Why? There's still other evidence. Even without the presumption, he's got evidence, right? Yes, that's correct. So there's no if about it, is there? Much as you like that word ---- I'll take out the if, Your Honor. Well, okay. So why don't you start again and tell us without the if? The government respectfully requests that the Court find that substantial evidence does not compel a contrary conclusion with regard to withholding of removal. Now, let's say we say that there was a presumption. What happens then? Let's say we look at the record and we say despite the government's equivocation on this, we find that they did in fact find past persecution. If you find that the immigration judge did find past persecution, then the government's position is that that future persecution presumption was rebutted by the record evidence that the State Department's report does not support that the same regime is in power. Same people. It's not the same people, Your Honor. It's been several decades since the Khmer Rouge were kicked out of power. I was alive then. I'm still alive today. 79 was not as long ago as some of you young people think. The country report simply doesn't support the fact that the government has changed. Quite to the contrary, the entity is quite different. What about the parts of the report that say that mistreatment of Chinese and other ethnic minorities continues? Isn't that there? The report does state that there is some animosity towards ethnic Vietnamese. The petitioner in this case is ethnically Chinese, and the report states that the ethnic Chinese in Cambodia are in fact well accepted. At any rate, he would have to show more than mere harassment. It has to be persecution and the incident that he relies upon. But not if there is past persecution which hasn't been combated, right, by the regime change. If there is a finding of past persecution, there's a presumption, and then we're talking about was it combated in this case, and if it wasn't combated, because the country report has enough things in it saying that, yeah, sure, the faces have changed, but it's basically the same idea. I mean, this is not political persecution. So when there's a regime change, you could say, well, people who are persecuted for political beliefs, you know, are in a different situation. But when you're talking about ethnic persecution, you can have regime change after regime change. And, I mean, look at the United States in the days of slavery. You had presidential election after presidential election, and, you know, before the Civil War we were still a slave-holding country. So on matters of race and ethnicity, the fact that there's a regime change doesn't necessarily change attitudes, right? Correct, Your Honor. But it's interesting in this case. The petitioner doesn't seem to base his claim of past persecution on his ethnicity. He claims that his father was persecuted because he was a businessman, that he was a tailor, and that the Khmer Rouge didn't like educated people. And I suppose maybe that was imputed to him as a child, but it's really unclear what nexus that has to a protected ground, whether his father being a business person was a member of a particular social group or whether that was an imputed political opinion. But his past persecution doesn't seem to be based on his race, only his fear of future persecution. And as you pointed out, the sole incidence that the petitioner relies upon occurred in 1991 when he was undocumented and it was probably legitimate that he was stopped at the border as he didn't have any legal papers. He went back willingly in 1993 and was adopted by an aunt who gave him legal papers. And so one might presume that his problems may have decreased as he reportedly acquired legal papers while he was in Cambodia during those three years between 1993 to 1996. I also wanted to mention that the petitioner sort of inflates from his asylum application until now the degree to which he was questioned by authorities. His asylum application states only that he was occasionally questioned as to his ethnic identity, whereas the petitioner now claims that that was frequent or repeated or happened many times and that wasn't shown by the record. Okay. Thank you. Thank you, Your Honor. You have a bit of time left for rebuttal. Thank you, Your Honors. I would first like to clarify that Fernandez, which is a case both parties have discussed in their brief, in fact explicitly says that this Court does have jurisdiction to review the denial of a motion to reopen where that denial is based on a determination that the motion to reopen did not, in fact, seek to present evidence that was material and previously unavailable. This is exactly the situation we have here. But it seems that that all existed at the time that he had his asylum hearing. Even though he didn't put it in, he could have put it in, and the purpose of a motion to reopen isn't to just go back and get a redo. If you could have done it the first time, you know, we don't give you a second time to do it. Well, Your Honor, two points. One, the jurisdictional issue is quite clear in Fernandez, that the Court does have jurisdiction contrary to the government's assertion. Well, I'm not disagreeing with you on that point. But moving ahead to the merits of the issue, the evidence that he was subjected to a 32-day psychiatric hospitalization in 2005 was not available at the time of his hearing in, I believe, 2003. It actually occurred when he was told by his prior attorney that the appeal had been dismissed and that, quote, there's nothing further I can do. At that point, the petitioner stopped eating and stopped speaking to the point that his family eventually contacted the local psychiatric authorities who determined that he was a danger to himself and 5150'd him into the psychiatric ward for over a month. That information was not available to the Court and could not have been presented prior. The Board used a single sentence to address this issue and simply said, well, the judge already took a look at this guy and said, yeah, he was depressed, but that's not sufficient. I mean, he was years and years and years, and it seems to me that the I.J. was really quite charitable towards him in terms of when he first got here. You know, I haven't actually seen a case previously where an I.J. was this charitable to someone about giving them, you know, tolling over a period of time. Your Honor, if the I.J. had been charitable when the government attorney said, if you want to grant withholding of removal, we would not appeal, he would have granted withholding of removal. I don't think he was charitably disposed towards this individual. No, but in terms of, he, how many, he was, he told how many years? Two. Because he was saying that he was, he just wasn't in the outside world that much and he was isolated at that point in time. Because he was working 14 hours a day in a donut shop. So, I mean, how many years over the one year was he? If you don't count the, what? That would be four. Four years beyond what the judge determined would have been reasonable. All right. But that was giving him two years, right? Well, subtracting the two years. So he arrived in 96 and applied in 2002. Thank you. The case at argue stands submitted.
judges: Archer, Kozinski, Callahan